
MIDWEST INVESTMENT COMPANY,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 4884.

United States District Court,
D. North Dakota,
Northeastern Division.

Jan. 7, 1975.

Robert Vaaler, Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, N. D., for plaintiff.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for defendant.

## MEMORANDUM OF DECISION AND ORDER

BENSON, Chief Judge.

### STATEMENT OF THE CASE

Plaintiff has sued to recover $27,227.-89 of federal taxes and interest for its taxable year ended March 31, 1968, together with statutory interest. A deficiency had been determined by the Internal Revenue Service, and an additional tax assessment was made on the plaintiff for the fiscal year ending March 31, 1968. Payment of the additional taxes was made January 11, 1971, and on December 19, 1972, the plaintiff executed and filed a claim for refund. That claim was disallowed on July 10, 1973.

Jurisdiction is based on 28 U.S.C. § 1346(a)(1):

"(a) the district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;"

### FACTS

The parties have stipulated the facts:

Plaintiff, Midwest Investment Company, (Midwest), was incorporated under the laws of North Dakota in 1952. It was the corporate successor of a three

man partnership, and the three partners —G. E. Satrom, Earl B. Anderson and A. W. Stokes—held all the stock of Midwest, both at the time of its incorporation and during the period in question. The plaintiff's business activity consisted primarily of holding real estate for rental, although it did hold some oil royalties. During its entire existence and until September, 1967, the rental properties which Midwest held consisted of two pieces of real estate, which will be referred to as the Midwest Building and the Dacotah Arms Building. The sale of the Midwest Building precipitated this litigation.

On April 1, 1967, at a meeting of the shareholders of Midwest, the matter of selling the Midwest Building to the Norby Department Store was discussed. Subsequently, a special shareholder's meeting was held on April 15, 1967, and the following resolution was passed:

"RESOLVED, that Midwest Investment Co. sell the property known as the Midwest Building, described as Lots 5 and 7 block 22, Original Townsite to the City of Grand Forks for cash or other assets equivalent thereton, [sic] and that the proceeds from the sale of said property be paid to the stockholders of the company upon their surrendering to the corporation in partial liquidation of the corporation that portion of the shares of stock held by them in the corporation. * * *

Resolved further, that the president and secretary of the corporation are hereby authorized to give a prospective purchaser an option to purchase said property for a reasonable, lenght [sic] of time, and in event of sale to make, execute and deliver to purchaser on reciept [sic] of payment a Warranty Deed to the property and bill of sale of the furnishings therein sold as part of the property, and to do other acts necessary to consumate [sic] the sale."

Pursuant to the April 1 meeting and the April 15 resolution, on September 1, 1967, plaintiff sold the Midwest Building to the Norby Department Store for the total sum of $175,000.00. The sale was made by Midwest pursuant to a plan of partial liquidation. At no time prior to the sale, did Midwest transfer title or possession of the building to its shareholders.

The proceeds from the sale were received by plaintiff and deposited in its banking account at the Valley Bank and Trust Company of Grand Forks, North Dakota. Subsequently, the proceeds of the sale were paid to the three shareholders of Midwest upon each surrendering to the corporation a proportionate share of his stock. Each shareholder reported capital gains on his individual tax returns for the year 1967, based on the difference between the amount he received from the sale of the Midwest Building and the basis of the Midwest stock he surrendered.

On its United States Corporate Income Tax Return for the year ending March 31, 1968, Midwest reflected the sale of the Midwest Building as a memorandum entry on Schedule D, with the following notation: "The above building sold pursuant to partial liquidation resolution." The plaintiff did not include or recognize any of the gain from the sale of the Midwest Building in computing its taxes due for the year ending March 31, 1968. Subsequently, plaintiff's corporate income tax return was audited by the Internal Revenue Service, and an additional $27,227.89 in taxes and interest were assessed against Midwest. The assessment of additional taxes and interest was based on a determination by Internal Revenue Service that plaintiff must recognize the gain on the sale of the Midwest Building, which was determined to be $109,541.56. The claim for refund was timely filed January 11, 1971.

## THE ISSUE

The parties have stipulated the issue:

"The sole issue in this case is whether the gain realized by Midwest upon the sale of the Midwest Building, pursuant

to a plan of partial liquidation, must be recognized by Midwest, where Midwest first sold the building at a gain and then distributed the proceeds to its shareholders."

## CONCLUSION

The Court concludes that the gain must be recognized by Midwest, and defendant is entitled to a dismissal of the action.

## RATIONALE

Plaintiff argues that the sale of the building by Midwest and the subsequent distribution of cash to the stockholders in partial liquidation of stock should be treated as one integrated transaction, because that was the obvious intention of the parties and cites Haag v. Commissioner of Internal Revenue, 334 F.2d 351, 355 (8th Cir. 1964), as authority for the general rule that the substance of the transaction as revealed by the evidence controls over the form employed.

Defendant argues that the desire and intended tax result could have been achieved only through acts by the corporation and the shareholders which meet the requirements of the statute, and that in this case those requirements were not met.

The parties are in agreement that a partial liquidation under 26 U.S.C. § 346 was had. The problem is that this section merely defines partial liquidation, and does not detail the tax consequences attendant upon such a liquidation. The parties further agree that a sale pursuant to a plan of partial liquidation could produce tax results as follows:

1. Nonrecognition of gain to the corporation on the distribution of property by it to its shareholders.

2. Shareholders treatment of the proceeds as a capital gain.

Plaintiff, through this action is seeking to achieve those tax results, and states its case "is based on the premise that the stockholders of Midwest, approach the proposed sale of their building to Norby with the intention of partially liquidating their corporation, and achieving a particular tax result as part of the transaction". The matter of tax consequences is covered by 26 U.S.C. § 336 (Internal Revenue Code of 1954), which provides:

"Except as provided in section 453(d) (relating to disposition of installment obligations), no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation."

█ In relation to this case, the words "on the distribution of property" take on particular significance. The plain meaning of this phrase can be distinguished from a sale of property by the corporation, and a later distribution of the proceeds to the shareholder. While it may all be part of one integrated transaction, there is no provision in Section 336 for nonrecognition of gain or loss when a corporation sells corporate property and later distributes the *proceeds* to its shareholders.

The regulations promulgated under § 336 state:

"Except as provided in section 453(d), no gain or loss is recognized to a corporation on the distribution by it of property in kind in partial or complete liquidation (regardless of the fact that such property may have appreciated or depreciated in value since its acquisition by the corporation. *However, gain or loss is recognized to a corporation on all sales by it, whether directly or indirectly (as through trustees or a receiver), except as provided in section 337* (relating to sales or exchanges in connection with certain liquidations." (emphasis added).

26 U.S.C. § 337 provides:

"(a) *General Rule.*—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete

liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period." [1]

■ From the foregoing law and regulations, it is evident that whether the sale and later distribution of the proceeds in partial liquidation were integral parts of one plan is of no consequence. The issue is the taxability of the *sale* proceeds, not the taxability of the distribution. It is readily apparent that if the plaintiff had distributed the building to the shareholders under a plan of partial distribution, no tax or gain would have resulted to the plaintiff. The shareholders could have sold the building to Norby and reported the gain as a capital gain with the same direct tax consequences to the shareholders that resulted from the sale of the building by the corporation and distribution of the proceeds to the shareholders. The way the transaction was handled resulted in an assessment of tax and interest in the amount of $27,227.89 against the plaintiff corporation, which could have been very simply avoided. This tax is in addition to the tax paid by the individual shareholders, and the effect of the assessment is a double taxation.

The taxpayer understandably protests this result as being inequitable and contrary to the intention of the plaintiff corporation and its shareholders. The attachment to the stipulated facts indicates that shareholder A. W. Stokes guided the corporation and the shareholders in the sale negotiations and in the consummation of the transaction. With reference to this handling, plaintiff's counsel, in a footnote to his brief, commented:

"As the court realizes Mr. Stokes is deceased, and can of course not testify as to his reasons for structuring the transaction as was done. I think it is a fair inference that the order in which the transaction took place was a result of error or misconception of the law and not any belated effort to group together unrelated transactions in an effort to seek, at this time, a tax result not originally contemplated by the parties."

Counsel's analysis is obviously correct as there is no conceivable reason why one, except through error, would structure a transaction in such a way that it resulted in a $27,227.89 tax and interest assessment, which could have been legally and properly avoided.

If this Court had the power to decide the case on equitable principles, it would order judgment for the plaintiff. However, the tax liability here erupts under the plain wording of the statute, which must prevail over the intentions of the parties.[2] The facts of this case make it abundantly clear that under the law, plaintiff corporation was properly assessed the tax which it paid. The tax consequences of partial liquidations depend upon the formal manner in which the transactions are arranged, and under

---

1. The history of this section would support a theory that the treatment extended to complete liquidating sales by § 337 is not extended to partial liquidations. That section provides for nonrecognition to a corporation of gain or loss on its sales or exchanges of property made within a 12 month period beginning on the date of the adoption of a plan of complete liquidation. *See* Mertens Law of Federal Taxation, 1 Code Commentary, § 337, p. 161; § 346, p. 198; § 346(a) :2, p. 201. At page 161, it is stated: "In order to eliminate some of the doubt and confusion in this area, the 1954 Code provides in Section 337 for nonrecognition to a corporation of *gain* or *loss* on its sales or exchanges of property made within a 12 month period beginning on the date of the adoption of a plan of complete liquidation. A comparable provision in the House bill extended the nonrecognition to sales or exchanges in the course of a partial, as well as complete liquidation. The limitation, in final enactment, to complete liquidation still leaves the Court Holding Company problem in the area of the partial liquidation." Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945).

2. *See* Zychinski v. Commissioner of Internal Revenue, 506 F.2d 637 (8th Cir., 1974).

the Internal Revenue Code, partial liquidations remain a tax trap for the unwary.

## ORDER FOR JUDGMENT

It is ordered that judgment be entered for the dismissal of the action.